IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

MARK PATRICK,

               Plaintiff,

v.                                 CIVIL  ACTION  NO.  3:10-1108

CALGON CARBON CORP.,

               Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the defendant's Motion to Dismiss and its Motion to Strike Jury Demand and Extracontractual Damages. [Doc. 4].  For the following reasons, the Court **GRANTS** the defendant's Motion to Dismiss, and **DISMISSES** the Complaint.

**I.      Background**

Plaintiff Mark Patrick ("Plaintiff") began his employment with Defendant Calgon Carbon Corporation ("Defendant") on October 26, 1987, at Defendant's Big Sandy Plant located in Catlettsburg, Kentucky.  Pl.'s Compl. 1, Doc. 1.  Defendant terminated Plaintiff's employment on November 3, 2006.  *Id.*

On February 5, 2009, over two years after his termination, Plaintiff applied for disability retirement benefits under Defendant's established pension plan (the "Plan").[1]  *Id.* at 2.  On the date of the application, Plaintiff submitted an accompanying letter written by counsel stating that he was

---

[1]Defendant clarifies that the plan under which Plaintiff applied is titled the "Calgon Carbon Corporation Pension Plan for Hourly-Rated Employees."  Def.'s Mem. Supp. Mot. to Dismiss 2, Doc. 5.

permanently disabled. *Id.* Subsequently, Defendant's benefit specialist, Darlene Markowitz, transmitted a response letter to Plaintiff on May 29, 2009 indicating that his application for disability benefits had been denied. *Id.* In the letter, Ms. Markowitz specified that, in order to qualify for disability benefits under the Plan, Plaintiff must have been disabled at the time of his termination, and Defendant's records did not reflect that he had satisfied this requirement. *Id.*

Plaintiff claims that he was in fact disabled at the time of his termination, and that he has since maintained this disability. *Id.* In support of this contention, he points to a July 14, 2009 decision from the Social Security Administration expressly finding that he has been disabled since October 23, 2006—ten days before Defendant terminated him. *Id.* Plaintiff further alleges that his counsel sent another application for disability benefits to the Defendant along with the Social Security decision adjudicating Plaintiff disabled, but in contravention of the express dictates of the Plan, Defendant has failed to act on this second application. *Id.*

On August 6, 2010, Plaintiff filed suit in the Circuit Court of Cabell County seeking payment of accrued disability benefits to which he alleges he is entitled under the Plan. *Id.* at 3-5. He further requested various measures of extracontractual damages. *Id.* The Complaint asserts claims for breach of contract and unfair settlement practices in violation of the West Virginia Unfair Trade Practices Act ("WVUTPA"), W. Va. Code § 33-11-1, *et seq.* Defendant timely removed the action to federal court, and now moves to dismiss Plaintiff's claims on the ground that they are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

## II.    Discussion

Defendant raises three issues for resolution by this Court. First, it seeks dismissal of

Plaintiff's claims on the ground that they are completely preempted by ERISA.  In addition,  it asks this Court to strike Plaintiff's request both for a jury trial and for extracontractual damages.

### A.      Motion to Dismiss

In ruling on a motion to dismiss, the factual allegations in the complaint must be taken in the light most favorable to the plaintiff, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also  Mylan Laboratories, Inc. v.  Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993) ("In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.").  However, the plaintiff must allege more than mere "labels and conclusions," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.  Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Defendant argues that Plaintiff's state law breach of contract and WVUTPA claims are completely preempted by ERISA.  ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."  29 U.S.C. § 1144(a).  The phrase "relate to" means having a connection with, or referencing a plan.  *See Tingler v. Unum Life Ins. Co. of Am.*, No. 6:02-1285, 2003 U.S. Dist. LEXIS 5455, at *7 (S.D. W. Va. April 2, 2003) (citing  *Am. Med. Security, Inc. v. Bartlett*, 111 F.3d 358, 361 (4th Cir. 1997)).   The Court addresses each of Defendant's arguments in turn.

### 1.      Breach of Contract

### a.      Preemption and Recharacterization

In its Motion to Dismiss, Defendant first argues that Plaintiff's breach of contract claim

should be recharacterized as a claim for benefits under ERISA.  Defendant is correct.  ERISA gives qualified pension plan participants the right to bring a civil action to recover benefits under terms of a plan, or to otherwise enforce a right under a plan.  *See* 29 U.S.C. § 1132(a)(1)(A)-(B).  When a state law claim attempts to enforce rights under a plan, ERISA "converts it into a federal claim." *Summer v. Carelink Health Plans, Inc.*, 461 F. Supp. 2d 482, 486 (S.D. W. Va. 2006); *see also Darcangelo v. Verizon Comm., Inc.*, 292 F.3d 181, 195 (4th Cir. 2002) ("[A]n action to enforce the terms of a contract, when that contract is an ERISA plan, is of necessity an alternative enforcement mechanism for ERISA . . . .").  Thus, even though a state law claim may be completely preempted under ERISA, rather than initially dismissing it, the proper action should be to "treat it as a federal claim."  *Darcangelo*, 292 F.3d at 195.

Here, Plaintiff's breach of contract claim requests damages under an ERISA plan. Specifically, Plaintiff seeks recovery measured by the amount of benefits he would have received under the Plan had Defendant not denied his application. This claim is an "alternative means of enforcing . . . rights under ERISA," *Darcangelo*, 292 F.3d at 192, and is thus completely preempted by federal law.  However, as both Plaintiff and Defendant agree, the claim should not be dismissed at the threshold.  Instead, it should simply be recharacterized as an ERISA claim.  *See Tingler*, 2003 U.S. Dist. LEXIS 5455, at *8-10 (recharacterizing a state breach of contract claim as a federal claim after finding the claim to be completely preempted because it was "necessarily an alternate mechanism for ERISA"); *see also Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 269 (5th Cir. 2004) (noting that ERISA's preemption provisions serve to recharacterize state claims purporting to enforce rights under benefit plans).   Accordingly, the Court recharacterizes Count I of Plaintiff's Complaint as an action under ERISA, 29 U.S.C. § 1132(a)(1)(B).

### b.     Recharacterized Claim and Exhaustion

Defendant further argues that the Court should dismiss Plaintiff's recharacterized claim for failing to state a claim in light of the applicable provisions of the Plan. There are two bases for this argument. First, Defendant submits that Plaintiff failed to file a disability retirement application while he was still employed as required by the Plan.[2] In addition, Defendant contends that Plaintiff failed to exhaust administrative remedies provided by the Plan after his application for benefits was rejected. The Court finds that this case can be resolved under the second argument, and therefore does not address the substantive basis for Defendant's decision to deny Plaintiff benefits.

ERISA does not explicitly contain an exhaustion requirement, but ERISA benefit plan participants must generally exhaust plan remedies before gaining access to the courts. *See Gayle v. United Parcel Serv., Inc.,* 401 F.3d 222, 226 (4th Cir. 2005). "This exhaustion requirement rests upon the Act's text and structure as well as the strong federal interest encouraging private resolution of ERISA disputes." *Makar v. Health Care Corp.*, 872 F.2d 80, 82 (4th Cir. 1989); *see also Thomas v. Wells Fargo Ins. Servcs. of W. Va., Inc.*, No. 2:07-671, 2010 U.S. Dist. LEXIS 95973, at *34 (S.D. W. Va. Sept. 14, 2010).

Defendant claims that Plaintiff did not appeal the adverse determination within 60 days as

---

[2] Section 2.03 of the Plan provides that "[a] participant who becomes Disabled while an Employee may retire and commence receiving Retirement Income as of his Disability Retirement Date . . . ." Plan Doc. at 16, No. 10. It is undisputed that Plaintiff's benefit application was rejected on May 29, 2009. Defendant contends that Plaintiff did not apply for disability benefits until he was no longer an employee—in contravention of section 2.03, which requires participants to commence such applications while they are still employed. Moreover, Defendant argues that the Plan requires participants to retire, as opposed to being terminated, as a result of a disability. In that vein, Defendant contends that Plaintiff was terminated on November 3, 2006, and did not retire. Although Plaintiff disputes this interpretation of the Plan provisions, these arguments are not addressed by this Opinion for reasons that follow.

required by section 10.04(c) the Plan,[3] but rather commenced a second application for the same benefits nearly ten months later.   Further, Defendant submits that Plaintiff's post-termination challenge in this Court came long after applicable period for appeals under the Plan had expired. While both parties focused their initial briefing solely on the applicability of section 10.04 of the Plan, the exhaustion issue is slightly more complicated.  On October 14, 2010, the Court issued an Order directing the parties to submit supplemental briefs on the potential applicability of section 10.05 of the Plan.  Section 10.05 provides in relevant part:

> Notwithstanding the foregoing provisions of this Article, if a claim filed on or after January 1, 2002 *depends upon a determination that the claimant is Disabled*, and if that claim is denied, the following special rules shall be applicable and shall supercede [sic] any contrary rules set forth above:
>
> (a) Notification of the initial adverse determination shall be made no later than forty-five (45) days after the Plan's receipt of the claim. This period may be extended for up to thirty (30) days, provided that the Committee both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the claimant in writing, prior to the expiration of the initial period of forty-five (45) days, of the circumstances requiring an extension of time and the date by which a decision is expected to be rendered. If, prior to the end of the first thirty (30)-day extension period, the Committee determines that, due to matters beyond the control of the Plan, a decision cannot be rendered within that extension period, the decision-making period can be extended for up to an additional thirty (30) days, provided that the claimant is notified, prior to the expiration of the first thirty (30)-day extension period, of the circumstances requiring the extension and the date as of which a decision is expected to be rendered.  In the case of any extension under this paragraph (I), the notice of the extension shall specifically explain the standards upon which the entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve these issues; and the

---

[3] Section 10.04 of the Plan sets forth a comprehensive and detailed procedure for both the filing and appeal of certain claims under the Plan.  Plan Doc. at 49-51, No. 10. Section 10.04(c) in particular provides that review of a denial of a general benefits application is available if an appeal is filed within "sixty (60) days after the day on which [a] written notice of denial is received."  *Id.* at 49.

claimant shall be afforded forty-five (45) days within which to provide the specified information (in the event that a period of time is extended due to a claimant's failure to provide necessary information, the period for making the benefit determination will be tolled from the date on which notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information).

(b) In addition to providing the information set forth in Section10.04(b), if an internal rule, guideline, protocol or other similar criterion was relied upon in making the initial adverse determination, the notice of the adverse determination shall contain either: (I) the specific rule, guideline, protocol, or other similar criterion; or (ii) a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other similar criterion will be provided free of charge to the claimant upon request.

(c) A claimant whose claim has been denied under this Section 10.05 shall have the appeal rights described in Section 10.04(c), except that the claimant shall have a period of one hundred eighty (180) days in which to request a full review by the Committee of the denial. In connection with the appeal, the claimant will receive written notice of the identity of any medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination.

Plan Doc. at 51-52, No. 10 (emphasis added). As the emphasized text demonstrates, section 10.05 appears to apply when a beneficiary's application depends upon a determination that he or she is disabled, and the application is subsequently denied. Defendant argues that it did not make a determination that Plaintiff was "disabled" as defined in the Plan, but instead denied his application under section 2.03 because he did not retire as a result of a disability. This argument lacks merit. Even if Defendant denied Plaintiff's application on the grounds that he did not retire as a result of his disability, the application still ultimately depended upon a determination that Plaintiff was in fact disabled. Moreover, Plaintiff's claim was thereafter denied. Thus, contrary to the parties' focus on the appeal mechanisms set forth in section 10.04, it is apparent to the Court that a plain reading

of the Plan compels the conclusion that section 10.05 should apply on these facts.

With that established, the Court examines Defendant's exhaustion argument under section 10.05.  Section 10.05 clearly provides that notice of an adverse determination on an application for disability benefits should be provided within 45 days after the application is received.  As Defendant concedes, it did not transmit its determination until May 29, 2009, over 100 days after Plaintiff had initially submitted his first application for benefits.  Defendant did not, therefore, comply with its own claims procedures.  Generally, where ERISA claim deadlines or procedures are not followed by a plan administrator, a claimant is "deemed to have exhausted the administrative remedies available under the plan . . . [and is] entitled to pursue any available remedies under section 502(a) of the Act," including judicial review.  29 C.F.R. § 2560.503-1(*l*).  Courts have interpreted Section 2560.503-1(*l*) to eliminate a claimant's responsibility to comply with approved plan appeal procedures where a plan administrator completely fails to render a decision on a benefits application.  *See, e.g.*, *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 105-07 (2d Cir. 2005) (noting that § 2560.503-1(*l*) gives claimants the right to petition federal courts for redress where a plan administrator fails to adhere to regulatory deadlines).  However, less clear are a claimant's exhaustion obligations under § 2560.503-1(*l*) in the face of an untimely formal benefits *determination* made by a plan administrator.[4]

At least one court outside of this circuit has dealt with facts similar to those in this case.  *See*

---

[4] The Fourth Circuit has not addressed this issue.  However, other district courts within this circuit have dealt with the general applicability of § 2560.503-1(*l*) in cases where a plan administrator entirely fails to act on a benefits application.  *See, e.g.*, *Henson v. Monongahela Power Co.*, No. 2:09-0219, 2010 U.S. Dist. LEXIS 106238, at *10-12 (S.D. W. Va. Sept. 29, 2010) (noting that § 2560.503-1(*l*) "deemed exhausted" administrative remedies for purposes of federal court review where claimants failed to receive any notice or determination regarding a benefits application).

*Tindell v. Tree of Life, Inc.*, 672 F. Supp. 2d 1300, 1311-12 (M.D. Fla. 2009) (holding that §
2560.503-1(*l*) does not in all instances excuse a claimant from exhausting administrative remedies
where a benefits decision is made, but made outside of the applicable plan deadlines).  The *Tindell*
court considered whether a plan administrator's decision denying a claimant's disability
application—which was made well outside of the deadlines detailed in the plan
document—effectively resulted in the "deemed exhaustion" of the claimant's administrative
remedies under the plan.  *Id.* at 1302-05, 1308.  The court found that it did not.  *Id.* at 1312.

 In reaching its holding, the court first clarified the principle that a claimant may deem her
administrative remedies exhausted under § 2560.503-1(*l*) in order to avoid waiting indefinitely for
a benefits determination in a case where a plan administrator simply fails to issue a decision on a
claim.  *Id.* at 1311.  However, it distinguished the latter case from instances where a claimant simply
fails to act on a benefits determination that is ultimately made, but made after plan deadlines have
already passed.  *Id.*  In these cases, the court reasoned, claimants should utilize administrative appeal
procedures available under the applicable plan in order to facilitate the efficient resolution of claims.
*Id.*  This enables the exhaustion requirement to accomplish its underlying purposes because "the
Court will not be required to 'take over [the plan administrator's] decisionmaking role in midstream'
or 'interrupt [the plan administrator's] appeal process when the [plan administrator] has already
invested time, resources, and expertise into the effort of responding.'"  *Id.* (quoting *Oglesby v. U.S.
Dep't of the Army*, 920 F.2d 57, 64 (D.C. Cir. 1990)).

 The polices in favor of expedient claim determination will not likely be frustrated where this
application of § 2560.503-1(*l*) is applied.  This was the case in *Tindell*, where the court noted that,
"unlike the circumstances in . . . *Nichols*, requiring such a claimant to complete an appeal before

proceeding to federal court does not . . . permit a plan administrator to delay accrual of the right to sue." *Id.* It did not delay the accrual of the right to sue in that case because the administrative remedies available, while initially deemed exhausted by the expiration of plan deadlines, were revived because the claimant simply failed to initiate a suit until long *after* the benefits decision had already been made—a decision which gave the claimant a clear basis for the denial of benefits, and notice of all appropriate subsequent remedies she might seek. *Id.* at 1312 (noting that claimant could "not . . . avoid the exhaustion requirement by citing technical deficiencies in the ERISA claims procedure that did not hinder her pursuit of an effective administrative review of her claims").

In this case, Defendant's unfavorable determination on Plaintiff's benefits application made on May 29, 2009 came well after the period provided by section 10.05. In the letter denying the application, Ms. Markowitz clearly identified section 2.03 as the basis for the denial of benefits, and gave information regarding other potential benefits for which Plaintiff could still be eligible under the Plan given his circumstances. Plaintiff does not challenge this letter's compliance with the applicable ERISA notice requirements in 29 U.S.C. § 1133. *See Brogan v. Holland*, 105 F.3d 158, 165 (4th Cir. 1997) (noting that ERISA requires the plan administrator to give the specific reasons for a denial of benefits and to afford a reasonable opportunity for review). However, rather than pursuing administrative appeal remedies provided by section 10.05, Plaintiff simply waited until August 6, 2010 to initiate a suit challenging Defendant's determination. Like the claimant in *Tindell*, Plaintiff was not unduly prohibited from seeking effective review of his claim at the time he received Defendant's adverse determination, despite the fact that Defendant failed to technically comply with section 10.05's procedural deadlines. *See Carnes v. Devon Energy Corp.*, 2:07-00523, 2008 U.S. Dist. LEXIS 54279, at *12 (S.D. W. Va. July 16, 2008) (noting that "[t]he failure [of a

plan administrator] to technically comply with all of ERISA's procedural requirements . . . does not automatically invalidate an otherwise sound denial of benefits").  This is because Plaintiff could have simply sought an internal appeal on the merits of that determination, utilizing the evidence that was already in Defendant's possession.

In his first briefing challenging Defendant's Motion to Dismiss, Plaintiff argued that he had not received crucial evidence from the Social Security Administration contradicting Defendant's May 29, 2009 decision until 46 days after Ms. Markowitz sent the denial letter.[5]  Consequently, he submits that he did not have adequate time to file an appeal within the 60-day period provided by section 10.04.  However, in light of the fact that the Court has determined that the appropriate appeal period was not 60 days, but 180 under section 10.05, this argument carries little weight.  Plaintiff had ample time to challenge Defendant's benefits determination pursuant to the appeal procedures provided by the Plan.  Defendant's lack of technical compliance with the Plan's decision deadlines does not in this case excuse Plaintiff's failure to utilize the applicable 180-day appeal period by waiting over a year to challenge Defendant's adverse determination.  Thus, the Court finds that Plaintiff has failed to exhaust administrative procedures as required by the Plan.

Finally, Plaintiff claims that because of the short period of time he had after his favorable social security decision—and because Defendant allegedly failed to respond to calls concerning any new evidence of his disability during the time frame after the denial—exhaustion of his

---

[5] Social security disability awards are given weight where the definitions of disability in the social security regulations and the applicable plan are sufficiently analogous, *see Conley v. Cingular Wireless Emp. Health & Benefits Plan*, No. 3:09-0327, 2010 U.S. Dist. LEXIS 91113, at *18-19 (S.D. W. Va. Sept. 1, 2010), but they are not necessarily incorporated into the record where they are provided after a plan administrator renders a final decision on an award.  *Id.* at *19.

administrative remedies would have been futile.[6]   To establish futility, a claimant must typically make a strong showing that the administrative remedies in a plan would not have provided adequate redress.  *See Makar*, 872 F.2d at 83 (noting that "bare allegations of futility are no substitute for the 'clear and positive' showing" traditionally required); *see also Stewart v. Nynex Corp.*, 78 F. Supp. 2d 172, 183 (S.D.N.Y. 1999) (stating that plaintiffs must make a "clear and positive" showing that resort to the administrative process would have been futile).   The Court finds unpersuasive Plaintiff's contention that exhaustion was futile because his counsel failed to get in touch with Defendant's Plan representatives months before filing his *second* application for the same benefits. Even if this allegation is true, it does not change the fact that he could have utilized the appeal procedures detailed in the Plan after he received an unfavorable decision.  He still had months to appeal after receiving his social security disability determination.  In that respect, he has not offered a compelling reason, much less a "clear and positive" one, for failing to seek administrative recourse.

"[S]ince the pursuit and exhaustion of internal Plan remedies is an essential prerequisite to judicial review of an ERISA claim for denial of benefits," and because the time to exhaust remedies under the Plan here has expired, "dismissal with prejudice is required."  *See Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 230 (4th Cir. 2005).  Accordingly, Count I is **DISMISSED**.

.        **2.      Unfair Trade Practices**

Plaintiff has also asserted claims for violations of the WVUTPA.  W. Va. Code § 33-11-1, *et seq.*  "Claims under the WVUTPA that are 'related to' the processing of benefits pursuant to an

---

[6] Plaintiff has not pled futility.  He merely argues it in his response to Defendant's Motion to Dismiss.

ERISA plan are preempted . . . ." *Tingler*, 2003 U.S. Dist. LEXIS 5455, at *14; *see also Summer*, 461 F. Supp. 2d at 486 (discussing 29 U.S.C. § 1132(a)(1)(B)).   Plaintiff's claim under the WVUTPA seeks damages resulting from the Plan's claims settlement practices.   Plaintiff agrees that these damages are not available under ERISA, and that the claim should be dismissed.

Accordingly, Count II of the Complaint is **DISMISSED**.

### B.      Motion to Strike

Finally, Defendant asks the Court to strike Plaintiff's jury demand, and his request for extracontractual damages.   Extracontractual damages for the improper or untimely processing of benefit claims are not available under ERISA. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985) (noting that Congress did not provide a cause of action for extracontractual damages in ERISA).   Moreover, jury trials are unavailable for ERISA claims. *See Abels v. Kaiser Aluminum & Chem. Corp.*, 803 F. Supp. 1151, 1152-54 (S.D. W. Va. 1992) (holding that there is no right to jury trial for ERISA benefits claims).   Plaintiff does not contest this characterization of the law. However, the Court need not rule on the Motion to Strike because of its decision to dismiss the Complaint.

### III.    Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. 4] is **GRANTED**, and the Complaint is **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        November 8, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE